JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Europlan Financial Services, LTD, As Trustee for Ormond Trust; And Deborah Richdale

## DEFENDANTS

True Product ID, Inc.; Rene Hamouth; Hamouth Family Trust; William R. Dunavant; Richard Specht; and Wilson Hendricks

(b) County of Residence of First Listed Plaintiff   The Isle of Jersey
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Philadelphia County, PA
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Jared H. Reiss, Jacobs Law Group, PC. One Commerce Square, 2005 Market St, Ste 1120, Philadelphia, PA 19103 (215) 569 9701

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☒ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. 78j(b), 15 U.S.C. 78t

Brief description of cause:
Security Fraud and Violations of the US Securities Exchange Act of 1934

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  833,314.67

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE  07/09/2008

SIGNATURE OF ATTORNEY OF RECORD   Jared H. Reiss

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: Europlan Financial Services Ltd., As Trustee For Ormond Trust, 41 The Parade, St. Helier, Jersey JE2 3QQ (the Isle of Jersey); and Deborah Richdale 30912 Calle Barbosa, Laguna Nigel, California, 92677

Address of Defendant:  True Product ID, Inc. 1650 Walnut Street, 3rd Floor, Philadelphia, Pennsylvania 19103; Rene Hamouth, 2608 Finch Hill, West Vancouver, British Columbia; William R. Dunavant,2624 Eagle Cove Drive, Park City, Utah; Richard Specht, 2980 Waterloo Street V6R 3J5, West Vancouver, British Columbia;   and Wilson W. Hendricks III, 224 North Mill View Way, Ponte Vedra Beach, Florida

Place of Accident, Incident or Transaction:   This matter arises out of securities transactions relating to a Corporation with it principal address in Philadelphia Pennsylvania
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))          Yes ☐   No ☑

Does this case involve multidistrict litigation possibilities?          Yes ☐   No ☑

*RELATED CASE, IF ANY:*

Case Number: _____    Judge _____    Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1.   Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
          Yes ☐   No ☑

2.   Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
          Yes ☐   No ☑

3.   Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
          Yes ☐   No ☑

4.   Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
          Yes ☐   No ☑

CIVIL: (Place   in ONE CATEGORY ONLY)

| | |
|---|---|
| **A.**   *Federal Question Cases:* | **B.**   *Diversity Jurisdiction Cases:* |
| 1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts | 1. ☐ Insurance Contract and Other Contracts |
| 2. ☐ FELA | 2. ☐ Airplane Personal Injury |
| 3. ☐ Jones Act-Personal Injury | 3. ☐ Assault, Defamation |
| 4. ☐ Antitrust | 4. ☐ Marine Personal Injury |
| 5. ☐ Patent | 5. ☐ Motor Vehicle Personal Injury |
| 6. ☐ Labor-Management Relations | 6. ☐ Other Personal Injury (Please specify) |
| 7. ☐ Civil Rights | 7. ☐ Products Liability |
| 8. ☐ Habeas Corpus | 8. ☐ Products Liability — Asbestos |
| 9. ☑ Securities Act(s) Cases | 9. ☐ All other Diversity Cases |
| 10. ☐ Social Security Review Cases | (Please specify) |
| 11. ☐ All other Federal Question Cases (Please specify) | |

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I,   Jared H. Reiss                                                                 , counsel of record do hereby certify:

☑   Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☑   Relief other than monetary damages is sought.

DATE:   July 9, 2008                    , Jared H. Reiss                    93056
                                          Attorney-at-Law                    Attorney I.D.#

**NOTE:**   A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE:   July 9, 2008                    , Jared H. Reiss                    93056
                                          Attorney-at-Law                    Attorney I.D.#

CIV.  609  (6/08)

**UNITED STATES DISTRICT COURT**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: Europlan Financial Services Ltd., As Trustee For Ormond Trust, 41 The Parade, St. Helier, Jersey JE2 3QQ (the Isle of Jersey); and Deborah Richdale 30912 Calle Barbosa, Laguna Nigel, California, 92677

Address of Defendant:  True Product ID, Inc. 1650 Walnut Street, 3rd Floor, Philadelphia, Pennsylvania 19103; Rene Hamouth, 2608 Finch Hill, West Vancouver, British Columbia; William R. Dunavant,2624 Eagle Cove Drive, Park City, Utah; Richard Specht, 2980 Waterloo Street V6R 3J5, West Vancouver, British Columbia;   and Wilson W. Hendricks III, 224 North Mill View Way, Ponte Vedra Beach, Florida

Place of Accident, Incident or Transaction:___This matter arises out of securities transactions relating to a Corporation with it principal address in Philadelphia Pennsylvania
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))          Yes☐   No☑

Does this case involve multidistrict litigation possibilities?          Yes☐   No☑
*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1.  Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?          Yes☐   No☑

2.  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?          Yes☐   No☑

3.  Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?          Yes☐   No☑

4.  Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?          Yes☐   No☑

CIVIL: (Place __ in ONE CATEGORY ONLY)

A.  *Federal Question Cases:*

1.  ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2.  ☐ FELA
3.  ☐ Jones Act-Personal Injury
4.  ☐ Antitrust
5.  ☐ Patent
6.  ☐ Labor-Management Relations
7.  ☐ Civil Rights
8.  ☐ Habeas Corpus
9.  ☑ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B.  *Diversity Jurisdiction Cases:*

1.  ☐ Insurance Contract and Other Contracts
2.  ☐ Airplane Personal Injury
3.  ☐ Assault, Defamation
4.  ☐ Marine Personal Injury
5.  ☐ Motor Vehicle Personal Injury
6.  ☐ Other Personal Injury (Please specify)
7.  ☐ Products Liability
8.  ☐ Products Liability — Asbestos
9.  ☐ All other Diversity Cases
    (Please specify)

**ARBITRATION CERTIFICATION**
*(Check appropriate Category)*

I,____Jared H. Reiss_____, counsel of record do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☑ Relief other than monetary damages is sought.

DATE:__July 9, 2008_____, Jared H. Reiss_____   93056_____
                                        Attorney-at-Law          Attorney I.D.#

**NOTE:**   A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE:__July 9, 2008_____, Jared H. Reiss_____   93056_____
                                        Attorney-at-Law          Attorney I.D.#

CIV.  609  (6/08)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EUROPLAN FINANCIAL SERVICES LTD., as TRUSTEE for ORMOND TRUST and DEBORAH RICHDALE,** | |
| **Plaintiffs,** | **CIVIL ACTION** <br> **File No.:_____** |
| **v.** | |
| **TRUE PRODUCT ID, INC., RENE HAMOUTH, HAMOUTH FAMILY TRUST, WILLIAM R. DUNAVANT, RICHARD SPECHT, and WILSON W. HENDRICKS III,** | |
| | **Jury Trial Demanded** |
| **Defendants.** | |

## RULE 7.1 DISCLOSURE STATEMENT OF PLAINTIFFS

Plaintiff, Europlan Financial Services Ltd., as Trustee of the Ormond Trust ("Europlan"), by and through its attorneys, the Jacobs Law Group, PC and Brown Rudnick LLP, hereby files this Disclosure Statement as required under F.R.C.Pro. Rule 7.1 (a), as follows:

1. The nongovernmental corporate party, Europlan Financial Services Ltd., in the above listed Action does not have any parent corporation or publicly held corporation that owns Ten Percent (10%) or more of its stock.

2. The nongovernmental corporate party, the Ormond Trust, in the above listed Action does not have any parent corporation or publicly held corporation that owns Ten Percent (10%) or more of its stock.

Respectfully Submitted,

JACOBS LAW GROUP, PC.

By: _____

Jared H. Reiss, Esquire     / ID No. 93056
E-mail: jreiss@jacobslawpc.com
Neal A. Jacobs, Esquire     / ID No. 41918
E-mail: njacobs@jacobslawpc.com
One Commerce Square,
2005 Market St, Ste 1120
Philadelphia, PA 19103
Tel. (215) 569 9701
*Attorneys for Plaintiffs*

Dated:

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EUROPLAN FINANCIAL SERVICES LTD., as TRUSTEE for ORMOND TRUST and DEBORAH RICHDALE,** | |
| **Plaintiffs,** | **CIVIL ACTION** <br> **File No.:_____** |
| **v.** | |
| **TRUE PRODUCT ID, INC., RENE HAMOUTH, HAMOUTH FAMILY TRUST, WILLIAM R. DUNAVANT, RICHARD SPECHT, and WILSON W. HENDRICKS III,** | **Jury Trial Demanded** |
| **Defendants.** | |

## RULE 7.1 DISCLOSURE STATEMENT OF PLAINTIFFS

Plaintiff, Europlan Financial Services Ltd., as Trustee of the Ormond Trust ("Europlan"), by and through its attorneys, the Jacobs Law Group, PC and Brown Rudnick LLP, hereby files this Disclosure Statement as required under F.R.C.Pro. Rule 7.1 (a), as follows:

1. The nongovernmental corporate party, Europlan Financial Services Ltd., in the above listed Action does not have any parent corporation or publicly held corporation that owns Ten Percent (10%) or more of its stock.

2. The nongovernmental corporate party, the Ormond Trust, in the above listed Action does not have any parent corporation or publicly held corporation that owns Ten Percent (10%) or more of its stock.

Respectfully Submitted,

JACOBS LAW GROUP, PC.

By: _____

Jared H. Reiss, Esquire      / ID No. 93056
E-mail: jreiss@jacobslawpc.com
Neal A. Jacobs, Esquire      / ID No. 41918
E-mail: njacobs@jacobslawpc.com
One Commerce Square,
2005 Market St, Ste 1120
Philadelphia, PA 19103
Tel. (215) 569 9701
*Attorneys for Plaintiffs*

Dated:

**APPENDIX I**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | |
|---|---|
| EUROPLAN FINANCIAL SERVICES LTD., as TRUSTEE for ORMOND TRUST and DEBORAH RICHDALE, <br><br>        Plaintiffs, <br><br>        v. <br><br> TRUE PRODUCT ID, INC., RENE HAMOUTH, HAMOUTH FAMILY TRUST, WILLIAM R. DUNAVANT, RICHARD SPECHT, and WILSON W. HENDRICKS III, <br><br>        Defendants. | CIVIL ACTION. <br><br> NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.   (See § 1:03 of the plan set forth on the reverse side of this form.)   In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)   Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.                     (  )

(b)   Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits                     (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.        (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.                     (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.   (See reverse side of this form for a detailed explanation of special management cases.)                     ( X )

(f) Standard Management – Cases that do not fall into any one of the other tracks.        (  )

| | | |
|---|---|---|
| **July 9, 2008** | , Jared H. Reiss | **Plaintiffs** |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 292- 1338 | (215) 569 9801 | Jreiss@jacobslawpc.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

Jacobs Law Group, PC
By: Neal A. Jacobs, Esquire
Attorney I.D. No. 41918
By: Jared H. Reiss, Esquire
Attorney I.D. No. 93056
One Commerce Square,
2005 Market St, Ste 1120
Philadelphia, PA 19103
(215) 569 9701

**Attorneys for Plaintiffs
Europlan Financial Services
Ltd., as Trustee for Ormond
Trust and Deborah Richdale**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EUROPLAN FINANCIAL SERVICES LTD., as TRUSTEE for ORMOND TRUST and DEBORAH RICHDALE,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**TRUE PRODUCT ID, INC., RENE HAMOUTH, HAMOUTH FAMILY TRUST, WILLIAM R. DUNAVANT, RICHARD SPECHT, and WILSON W. HENDRICKS III,**<br><br>**Defendants.** | **CIVIL ACTION**<br>**File No.:**_____<br><br><br><br><br>**Jury Trial Demanded** |

## COMPLAINT FOR DAMAGES
## AND INJUNCTIVE RELIEF

Europlan Financial Services Ltd., as Trustee of the Ormond Trust ("Europlan") and Deborah Richdale ("D. Richdale") (collectively "Plaintiffs"), by and through their attorneys, the Jacobs Law Group, PC and Brown Rudnick LLP, hereby file this Complaint For Damages and Injunctive Relief against True Product ID, Inc., Rene Hamouth, The Hamouth Family Trust, William R. Dunavant, Richard Specht and Wilson W. Hendricks III (collectively referred to as "Defendants"), and allege upon personal

knowledge as to their own actions described below, and upon belief, based on public filings and reasonable investigation, as to the other allegations, as follows:

## PARTIES

1.      Upon information and belief, defendant True Product ID, Inc. ("True Product", or "TPID") is a Delaware corporation, with its principal place of business at 1650 Walnut Street, 3rd Floor, Philadelphia, Pennsylvania 19103.  TPID was formerly known as OnTV Inc., but changed its name to TPID pursuant to amended articles of incorporation, dated May 4, 2006.

2.      Upon information and belief, in March 2006, TPID acquired a technology license which granted TPID the worldwide rights to manufacture and sell products using certain "anti-counterfeiting technology".  TPID currently produces integrators for anti-counterfeiting and security surveillance applications and is a provider of integrated tracking devices. TPID delivers turnkey solutions for governments, armed forces, and industry, through its own technology and through aggregating the technology, products, and services of third parties via licensing agreements and/or joint ventures.  Its technology is both focused on commercial and civil applications, and applies to a range of businesses.

3.      As reported in TPID's press releases, and in various SEC filings, on August 27, 2007, TPID, through a Chinese joint venture affiliate, entered into a contract with the national Quality Inspection Department of the State General Administration for Quality Supervision, Inspection and Quarantine of the People's Republic of China ("AQSIQ") to develop a national safety/security system for China's liquefied natural gas and other pressurized canisters and other special equipment.  AQSIQ, a Chinese

government entity, is considered the Chinese counterpart to the United States Consumer Product Safety Commission.

4.      According to a May 7, 2008 Form DEF 14C filing made by TPID with the United States Securities and Exchange Commission ("SEC"), prior to November 29, 2007, TPID had approximately 956,122,336 shares of Common Stock, par value $.001 and 1,020,000 shares of Preferred Stock outstanding.  On November 29, 3007, the Board of Directors of TPID authorized, by way of written consent, an amendment to the Certificate of Incorporation of TPID to effect a one (1) for one hundred (100) reverse stock split, whereby, as of the Record Date, for every one hundred shares of Common Stock then owned, each stockholder received one share of Common Stock (the "Reverse Split").  According to the Form DEF 14C, the Reverse Split became effective twenty days after May 7, 2008 or May 27, 2008, and applied to stockholders of record as of April 22, 2008.

5.      Upon information and belief, currently there are approximately 9,561,223 shares of Common Stock of TPID outstanding.  The shares are publicly traded in the over-the-counter market, specifically on the Electronic Bulletin Board maintained by the Nasdaq Stock Market, Inc. under the symbol "TPID."

6.      Upon information and belief, defendant Rene Hamouth ("Hamouth") is a resident and citizen of West Vancouver, British Columbia with a residence located at 2608 Finch Hill.  As reported in TPID's Form 8-K filed with the SEC on November 7, 2007, TPID retained Hamouth as a consultant to assist TPID in stock market matters and other stock promotion.  During all relevant times, although Hamouth had the official title of "consultant" to TPID, he was in fact a promoter and control person of TPID, and

held himself out as such.  According to TPID's Form 8-K and other SEC filings, under his consulting agreement, Hamouth was to receive compensation of 3,000,000 restricted shares of common stock of TPID post Reverse Split, or 31.38 percent of TPID's outstanding common stock.  However, as disclosed in public filings made with the SEC, Hamouth received 300,000,000 shares before the Reverse Split, which he placed in the name of the Hamouth Family Trust ("Hamouth Trust), although Hamouth remained the beneficial owner of those shares.  Upon information and belief, Hamouth is the trustee of the Hamouth Trust and, accordingly, the Hamouth Trust is believed to be a citizen and resident of West Vancouver, British Columbia.  Upon information and belief, the shares issued to the Hamouth Trust were unregistered with the SEC and not subject to any exemption from registration, and were to be restricted according to SEC rules and regulations, and TPID's own SEC filings.  However, TPID did not place a restrictive legend on those shares, enabling Hamouth and the Hamouth Trust to use those unregistered shares as part of the fraudulent scheme described herein.

7.     Upon information and belief, defendant William R. Dunavant ("Dunavant") is a resident and citizen of Park City, Utah with a residence at 2624 Eagle Cove Drive. From November 2007 to March 2008, Dunavant was the Chief Executive Officer and Chairman of TPID.  In March 2008, Dunavent assumed the title of Managing Director, Global Strategic Initiative of TPID.  Notwithstanding the change in title, Dunavant still controls TPID, and his formal change in title was a sham effectuated in an attempt to hide from liability for his wrongful acts.  According to reports filed with the SEC, Dunavant was the beneficial owner of 200,000,000 shares of common stock of TPID before the Reverse Split, and 2,000,000 shares of common stock post Reverse Split, or

20.92 percent of TPID's outstanding stock.  Dunavant has actively participated in the corporate decisions and actions of TPID and the misrepresentations and fraudulent activity of Hamouth, that gave rise to the intentional, deceitful and wrongful acts alleged in this Complaint.

8.     Upon information and belief, Hamouth and Dunavant have worked together in various stock schemes in the past, and the facts alleged herein are at least the fourth fraudulent stock scheme in which they have acted together to defraud investors and/or issuers of securities.  Upon information and belief, Hamouth and/or Dunavant previously committed securities violations in connection with at least three other public companies, Net Command Tech, Inc. ("Net Command"), Smart Video Technologies, Inc. ("Smart Video") and Interpid Global Imaging 3D, Inc. ("Intrepid"). Upon information and belief, Net Command was investigated by the SEC as a "pump and dump" scheme to defraud investors and Hamouth was found liable by the United States District Court for the District of Colorado for illegal "short swing" trading involving Net Command stock; and Hamouth was again found liable by the United States District Court for the Northern District of Georgia for short swing trading involving Smart Video while acting as a consultant for Smart Video, at the same time that Dunavant was CEO of Smart Video.  In addition, both Hamouth and Dunavant have been sued for securities fraud in the United States District Court for the Middle District of Florida by various investors who were the victims of a scheme by Hamouth, while he was a Director, Officer and Principal Shareholder of Intrepid, and by Dunavant, while he was the CEO of Intrepid.  Hamouth also was banned from the Vancouver Stock Exchange for fraud in connection with yet another transaction.

5

9.     Upon information and belief, defendant Richard Specht ("Specht") is a resident and citizen of West Vancouver, British Columbia with a residence located at 2980 Waterloo Street V6R 3J5.  During all relevant times, Specht acted as the agent for Hamouth and actively and knowingly assisted Hamouth in connection with Hamouth's promotion and consulting for TPID.  In particular, Specht actively assisted Hamouth in making misrepresentation to Plaintiffs' agent in connection with TPID, and in the short sales that were part of the fraudulent scheme alleged herein.  Sprecht has worked with Hamouth on other fraudulent schemes, and is a defendant along with Hamouth, Hamouth Trust and Dunavant in the Intrepid securities fraud case.

10.    Upon information and belief, defendant Wilson W. Hendricks III ("Hendricks") is a resident and citizen of Ponte Vedra Beach, Florida, with a residence at 224 North Mill View Way.  Since March 2008, Hendricks has been the Chief Executive Officer and a Director of TPID; from November 2007 to March 2008, he was Chief Operating Officer of TPID.  In his capacity as Chief Operating Officer and then Chief Executive Officer of TPID, Hendricks knew of, participated in, and approved the actions of TPID, and Hamouth and Dunnavant, as representatives of TPID, that were part of the fraudulent scheme described herein.

11.    Upon information and belief, Hamouth, Dunavant and Hendricks each are control persons of TPID under the Securities Exchange Act of 1934 (the "Exchange Act"), Section 1-503 of Title 70 of the Pennsylvania Statutes, 70 P.S.§ 1-503 (2007), and California Corporations Code § 25403, and are fully liable for all wrongful acts complained of herein.

12.     Plaintiff Europlan is a trust company formed under the laws of the Isle of Jersey, with its principal place of business at 41 The Parade, St. Helier, Jersey JE2 3QQ.  At all relevant times, Europlan acted as trustee for the Ormond Trust.  The Ormond Trust is a trust formed under the laws of the Isle of Jersey.  The grantor of the Ormond Trust is non-party Brad Richdale; the beneficiaries of the Ormond Trust are Deborah Richdale, and her children, who are residents of Laguna Nigel, California.

13.     Plaintiff Deborah Richdale is a resident of Laguna Nigel, California.  Ms. Richdale is a beneficiary of the Ormond Trust.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.  The claims asserted herein arise under §§ 10(b), 14 and 20(a) of the Exchange Act; and the rules and regulations promulgated there under by the SEC, including 10b-5 and 17 C.F.R. §240.10b-5.

15.     Venue is proper in this district pursuant to 15 U.S.C. §78(a), because a substantial part of the actions giving rise to these claims occurred within this district and pursuant to §27 of the Exchange Act, 28 U.S.C. §1391(b).  Many of the events or omissions giving rise to the claims alleged occurred within this district.  TPID, in public filings with the SEC, has stated that its principal office is located within this district.

16.     Pursuant to 28 U.S.C. §1367, this Court also has pendant jurisdiction over Plaintiffs' claims that arise under Pennsylvania and California state laws.

17.     This Court has personal jurisdiction over all of the Defendants based on their pattern of fraud and deceptive conduct and their tortuous actions, some or all of which occurred within this district.

18.     In connection with the acts described herein, Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce in the perpetration of the wrongful acts hereinafter alleged.

19.     True Product's common stock, par value $.001 per share, is registered under §§ 12(b) or 12(g) under the Exchange Act.   As a result, True Product files periodic reports with the SEC and quotes its common stock on Nasdaq's Electronic Bulletin Board under the symbol "TPID."

## FACTUAL ALLEGATIONS

20.     In or about October, 2007, Brad Richdale, the Grantor of the Ormond Trust, and husband of Deborah Richdale, was approached by Hamouth concerning investing in TPID stock.  Hamouth knew Brad Richdale from prior business transactions and investments.  As far as Brad Richdale knew at the time, Hamouth was a legitimate investor, and Brad Richdale did not know of the various fraudulent schemes and prior litigations and investigations involving Hamouth and other defendants described above.

21.     On or about October 24, 2007, Hamouth told Brad Richdale that the had been hired as a consultant and promoter of TPID and was acting on behalf of TPID to find a "select" group of investors.  In fact, TPID did not publicly announce Hamouth's retention as a consultant until November 7, 2007.   However, at all times in his discussions with Brad Richdale, Hamouth described himself as a "control person" of TPID.  Hamouth said he was in charge of all funding, market making, and strategic decisions of TPDI and that Dunavant, TPID's CEO, reported to him.

22.     In a number of communications, Hamouth urged Brad Richdale to begin building a position in TPID.  Richdale stated that, if any investment was made, it would be by the Ormond Trust, of which he was the grantor, and/or by his wife Deborah. At all

times, Hamouth, and the other defendants, knew that their representations would be relied upon by the Ormond Trust and/or Deborah Richdale, and that the fraudulent scheme would defraud and injure Plaintiffs.

23.     Among other things, Hamouth described TPID's business, business plan and prospects in glowing terms, especially due to TPID's reported government contract of $1.4 Billion with the Chinese Government.  Hamouth further represented that TPID was close to obtaining over $5 Billion in contracts as a follow up to the $1.4 Billion Chinese Government contract already announced.

24.     Hamouth also represented that there were less than 100 million shares in the "float" of TPID and less than 500 million shares outstanding.  Hamouth stated the company was going to immediately do a reverse stock split of 100:1, so that the price of TPID stock would rise, and institutional investors would be attracted to it.

25.     Hamouth further represented that TPID had hired Ralph Schatzmire, a Toronto based consultant, to secure funding.  Hamouth also represented that all TPID needed was approximately $10 Million in funding in order to fulfill its business plan, and that contract was in place from Roth Capital in Newport Beach, California, to provide that funding.

26.     Hamouth stated that he had received projections from investment bankers that the stock price of TPID would reach $600 per share by the end of 2008 after the Reverse Stock Split, and he "guaranteed" to Brad Richdale, on behalf of the Ormond Trust and Deborah Richdale, that, if the Ormond Trust or Brad Richdale's wife began buying at that time, he would give them "downside protection", so that he, or his Trust, would make up the difference of any amount that was less than the purchase price per

9

share if the stock did not go up as he promised.  Hamouth further stated that a "bridge financing via Private Placement" would be offered before the Roth funding closed in January.  Hamouth urged Brad Richdale to have the Trust and/or his wife to consider investing in that Private Placement, and guaranteed at least a 500% return by the time Roth funded.

27.    Prior to the purchases of TPID stock by Europlan, as Trustee, and Deborah Richdale, Brad Richdale contacted Dunavant , then the CEO of TPID.  Brad Richdale told Dunavant about the representations by Hamouth and wanted Dunavant, as CEO of TPID, to confirm them on behalf of TPID.  Dunavant said that he had recruited Hamouth to "create a market and secure funding for TPDI".  In exchange for Hamouth's service he was paid 300,000,000 restricted shares, which would become 3,000,000 restricted shares after the Reverse Split.  Dunavant confirmed, on behalf of TPID, the representations by Hamouth, upon which Europlan, as Trustee, and Deborah Richdale relied in making their purchase.

28.    On or about November 12, 2007, Dunavant told Brad Richdale that Ralph Schatzmir informed him that the company was receiving "three term sheets for funding".  At that time, Dunavant represented that the investment bankers concluded that the stock would be worth $600 per share after the reverse was effectuated and the new contracts were announced.  Dunavant also asked Brad Richdale if he, his wife or the Ormond Trust would invest in the private placement that Hamouth had discussed.

29.    After reviewing the public filings that confirmed the contract with the Chinese government, on or about November 14, 2007 Europlan, acting as Trustee for the Ormond Trust, began buying TPID stock in the open market, accumulating

6,035,000 shares, pre-Reverse Split.  The average cost of such purchases was 13.107 cents per share.  Europlan, as Trustee, invested a total of $784,974.87.

30.      Deborah Richdale purchased TPID stock on or about November 22, 2007, and holds 902,200 shares, pre-Reverse Split, at an average cost 10.9 cents per share. Deborah Richdale invested a total of $98,339.80.

31.      In making such purchases, Europlan, as Trustee, and Deborah Richdale relied upon the representations made by Hamouth and Dunavant, on their own behalfs, and on behalf of TPID, and believed those representations to be true.  In addition, Europlan and Deborah Richdale also relied upon the agreement by Hamouth that he would give them downside protection if the market price went down from their purchase price by making up the difference.

32.      In fact, most of the representations by Hamouth and Dunavant, on their own behalfs, and on behalf of TPID, upon which Plaintiffs relied, were false and misleading when made, and were known by Hamouth, Dunavant and TPID to be false and misleading when made.  Among the false representations were that TPID had less than 1,000,000 shares in the float, and less than 500,000,000 shares outstanding, pre-Reverse Split, when the float and the outstanding shares were materially higher. Hamouth and Dunavant falsely represented that funding had been secured through Ralph Schatzmire and Roth Capital.  Hamouth and Dunavant falsely represented that TPID was close to obtaining additional contracts as a follow up to the Chinese government contract already in place.  Hamouth and Dunavant falsely represented that they had received independent projections of $600 per share for TPID stock. Furthermore, Hamouth and Dunavant falsely represented that the unregistered shares

that Hamouth or the Hamouth Trust were to receive for his consulting duties would be restricted when, in fact, no restriction was placed on such shares, enabling Hamouth to use such shares in connection with his illegal short sales described below.

33.    Soon after Plaintiffs purchased their shares of TPID in the open market, the price began to fall, notwithstanding the projections and representations by Hamouth and Dunavant prior to such purchases.  When Brad Richdale attempted to determine why the price was falling, Hamouth told him that numerous persons and entities had sold TPID stock short, and that was depressing the stock price, but that neither the Ormond Trust nor Mrs. Richdale should be concerned because everything else he and Dunavant had represented were still on track.  Moreover, on or about February 27, 2008, Dunavant, after visiting China and getting further acquainted with the details of the arrangement with AQSIQ, made further false representations to the Plaintiffs, stating that the actual value of contract with AQSIQ significantly exceeded its previously reported value of $1.4 Billion and that the contract, in fact, was worth twice that amount.

34.    Unbeknownst to Brad Richdale, or Plaintiffs, upon information and belief, the illegal short sales were being effected by or on behalf of Hamouth, the Hamouth Trust and Sprecht.  Hamouth engaged in such short selling because he knew of the falsity of his representations to Brad Richdale, Plaintiffs and other investors.  Hamouth also knew that the price of TPID stock would fall based on the short sales and the failure of Defendants' representations to be true.  Moreover, TPID did not place restrictive legends on the shares issued to the Hamouth Trust as part of Hamouth's consulting agreement, as it was required to do since the shares were unregistered with the SEC and not subject to any exemption from registration.  Upon information and

belief, Hamouth used the unlegended share certificates to effectuate his short sales, and then tried to register those shares in order to be able to cover his short sales. Hamouth was unable to register such shares because they were not eligible for registration or any exemption from registration under applicable SEC rules and regulations.

35.    Indeed, Hamouth's efforts to use the unlegended but unregulated certificates constituted an illegal offer to sell unregulated stock under SEC rules and regulations.  However, neither TPID, nor its officers, Dunavant and Hendricks, did anything to stop such illegal offers.

36.    On or about March 31, 2008, Hamouth urged Brad Richdale to have the Ormond Trust and Deborah Richdale buy more shares in TPID, promising downside protection in every purchase, and again guaranteeing the price before the year's end to be at least $600 per share after the 100:1 reverse split (which was then 90 days behind schedule).  Hamouth added that he would further guarantee downside price protection so that if the market price went down from their purchase price he would make up the difference in his own stock.  Notwithstanding such representations and guarantees, neither Europlan as Trustee, nor Deborah Richdale purchased any more TPID stock because the price had not gone up as Hamouth and Dunavant had represented it would do.

37.    On or about April 10, 2008, Hamouth told Brad Richdale that he should urge other shareholders to sell as the stock price went up so that the stock doesn't get ahead of itself on the way back up.

38.    On or about April 5, 2008, Brad Richdale told Hamouth that he and his affiliates were interested in buying distressed real estate in prime locations in Laguna Beach, California.  He asked Hamouth if he could find a buyer for the blocks of TPID stock rather than sell in the open market.  Hamouth, through his agent and colleague Sprecht, offered to buy the entire block at a price 25% above the market.  Such offer to buy at above the market was an effort by Hamouth and Sprecht to acquire shares to cover their prior illegal short sales.

39.    Such offer, and other information learned around that time, caused Brad Richdale and Plaintiffs to conclude that Hamouth had sold TPID stock short at 13 to 16 cents per share, and stood to make a tremendous profit if he could buy large blocks of publicly traded stock to cover their prior illegal short position.

40.    On or about April 5, 2008, Brad Richdale told Dunavant that he believed that Hamouth was selling unregistered shares in hopes of covering short sales. Dunnavant later admitted that he knew that Hamouth was the person who was shorting the market, but neither Dunavant, Hendricks or TPID did anything about it.  Moreover, Hamouth, through the Hamouth Trust, owned more than 30% of TPID's stock.  Thus, any profits that Hamouth's short sales generated constitute a "short swing" profit that TPID is entitled to recover under Section 16 of the Exchange Act, but TPID has not tried to recover such profits, as further indication of the complicity of TPID and its management, Dunavant and Hendricks, in the scheme by Hamouth and Sprecht.

41.    On or about May 27, 2008, TPID effectuated the Reverse Split of 100:1. However, contrary to TPID's public statements that the Reverse Split should attract investors to buy the stock, the price has been significantly depressed as a result of the

fraudulent scheme described herein.  As a result, on or about July 1, 2008, the price of TPID stock had fallen to 55 cents per share (which translates to .0055 per share pre-Reverse Split, as compared to the 10.9-13.007 cents purchase price by Plaintiffs.  In addition, there currently is virtually no trading in TPID stock, and there is almost no volume.  As a result of Defendants' actions, Plaintiffs have suffered almost a complete loss of their investment.

## COUNT I

## VIOLATION OF §10(b) OF THE EXCHANGE ACT AND RULE 10b-5
## (15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5)

42.     Paragraphs 1 through 41 are hereby incorporated by reference as if they were repeated herein in full.

43.     Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder prohibit (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact or omitting to state material facts necessary to make the statements not misleading; and/or engaged in acts, practices, and a course of business which operated, or was intended to operate, as a fraud and deceit upon Plaintiffs.

44.     Defendants collectively employed devices, schemes and artifices to defraud, made untrue statements, and engaged in practices which were intended to and did operate as fraud or deceit upon Plaintiffs.

45.     Defendants Hamouth, Dunavant and Hendricks, through their control of TPID, violated § 10(b) and Rule 10(b)-5 of the Exchange Act.

46.     Plaintiffs suffered damages as a proximate result of the Defendants' fraud and their employment of devices, schemes and artifices to defraud the Plaintiffs in connection with the purchase of the TPID stock by the Plaintiffs as alleged herein.

## COUNT II

## VIOLATION OF §20 OF THE EXCHANGE ACT (15 U.S.C. §78t)

47.     Paragraphs 1 through 46 are hereby incorporated by reference as if they were repeated herein in full.

48.     The individual Defendants are persons that were directly or indirectly controlling, controlled by, or under common control with TPID.  By virtue of their high level positions with TPID, participation in and/or direction of the company's operations, Hamouth, Dunavant and Hendricks had the requisite power to control or influence TPID and as such, said individual Defendants were, and acted as, controlling persons of TPID within the meaning of §20(a) of the Exchange Act.

49.     The individual Defendants, Hamouth, Hamouth Trust, Dunavant, Hendricks and Specht unlawfully, directly or indirectly, aided and abetted TPID by knowingly providing substantial assistance in the commission of the wrongful acts and practices alleged in this Complaint, thus resulting in violations of the Exchange Act.

50.     As set forth herein, Hamouth, Hamouth Trust, Dunavant, Hendricks and Specht violated § 10(b) and Rule 10b-5 of the Exchange Act by their acts and omissions to act and as such, are the direct and proximate result of TPID's wrongful conduct.

51.     Plaintiffs suffered damages in connection with the aforesaid violations of §20(a) of the Exchange Act and therefore the individual Defendants are liable therefore.

16

## COUNT III

## VIOLATIONS OF PENNSYLVANIA SECURITIES LAWS

52.     Paragraphs 1 through 51 are hereby incorporated by reference as if they were repeated herein in full.

53.     TPID has its principal place of business in the State of Pennsylvania and, as alleged above, many of the events and wrongful actions giving rise to the claims herein occurred within the State of Pennsylvania.   Accordingly, the Pennsylvania Securities Statutes apply to the wrongful acts alleged herein.

54.     Section 1-401 of the Pennsylvania Securities Act prohibits, in connection with the offer, sale or purchase of any security, directly or indirectly, (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact or omitting to state material facts necessary to make the statements not misleading; or (c) engaging in acts, practices, and a course of business which operated, or was intended to operate, as a fraud and deceit upon Plaintiffs.

55.     Defendants collectively employed devices, schemes and artifices to defraud, made untrue statements and engaged in practices which were intended to and did operate as fraud or deceit upon Plaintiffs.

56.     Section 1-402 of the Pennsylvania Securities Act prohibits any person, directly or indirectly, ... (b) to effect, alone or with one or more other persons, a series of transactions in any security creating actual or apparent active trading in the security or raising or depressing the price of the security for the purpose of inducing the purchase or sale of the security by others, or (c) to induce the purchase or sale of any security by the circulation or dissemination of information to the effect that the price of the security will or is likely to rise or fall because of market operations of any one or more persons

conducted for the purpose of raising or depressing the price of the security, if he is selling or offering to sell or purchasing or offering to purchase the security.

57.     Defendants, other than Hendricks, engaged in a series of transactions in TPID stock to create actual or apparent active trading in such security and raising and depressing the price of TPID stock for the purpose of inducing the purchase of TPID stock by Plaintiffs, and Defendants, other than Hendricks, induced the purchase of TPID stock by circulating and disseminating information that the price of the security is likely to rise because of market operations by Defendants conducted for the purpose of raising the price of TPID stock.

58.     Pursuant to § 1-501 of the Pennsylvania Securities Statute, Defendants, by virtue of their violations of §§ 401 and 402 of the Pennsylvania Securities Statute, are liable to Plaintiffs for damages equal to the difference between the price at which Plaintiffs purchased such securities, and the market value TPID stock would have had at the time of the purchases in the absence of Defendants' fraudulent conduct, plus interest at the legal rate.

59.     Pursuant to § 1-503 of the Pennsylvania Securities Statute, TPID, Hamouth, Dunavant, Sprecht and Hendricks, each of whom materially aided in the acts or transactions constituting the violations alleged herein, are each jointly and severally liable with, and to the same extent as each of the other Defendants.

## COUNT IV

## VIOLATIONS OF CALIFORNIA SECURITIES LAWS

60.     Paragraphs 1 through 59 are hereby incorporated by reference as if they were repeated herein in full.

61.    Deborah Richdale is a resident of the State of California who purchased shares of TPID as a result of the fraudulent conduct alleged herein.  Deborah Richdale and her children, residents of the State of California, are the beneficiaries of the Ormond Trust, on whose behalf Europlan purchased shares of TPID as a result of the fraudulent conduct alleged herein.  Brad Richdale, a resident of California, is the grantor of the Ormond Trust, husband of Deborah Richdale, and the person to whom the fraudulent statements alleged herein were made.  As alleged above, the investment decisions, and many of the events and wrongful actions giving rise to the claims herein, occurred within the State of California.  Accordingly, the California Corporation Code applies to the wrongful acts alleged herein.

62.    California Corporations Code § 25400 makes it unlawful (i) to induce the purchase or sale of any security by the circulation or dissemination of information that the price of such security is likely to rise because of market operations by persons conducted for the purpose of raising the price of such security; (ii) for the purpose of inducing the purchase or sale of such securities by others, to make false and misleading statements and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made not misleading.

63.    Defendants, other than Hendricks, engaged in a series of transactions in TPID stock to create actual or apparent active trading in such security and raising and depressing the price of TPID stock for the purpose of inducing the purchase of TPID stock by Plaintiffs, and to induce the purchase of TPID stock by circulating and disseminating information that the price of the security is likely to rise because of market operations by Defendants conducted for the purpose of raising the price of TPID stock.

64.     California Corporations Code § 25401 makes it unlawful to offer or sell a security by means of any written or oral communications which include an untrue statement of any material facts or omit any material facts.

65.     Defendants made false and misleading statements and omitted material facts which were intended to and did operate as a fraud or deceit upon Plaintiffs.

66.     California Corporations Code § 25403 makes every person who directly or indirectly provides substantial assistance to another person to violate any provision of the California Corporations Code shall be deemed to be in violation of that provision, rule or order to the same extent as the person to whom the assistance was provided.

67.     Each of TPID, Hamouth, Hamouth Trust, Dunavant, Sprecht and Hendricks materially aided in the acts or transactions constituting the violations alleged herein, and are each jointly and severally liable with, and to the same extent as each of the other Defendants.

68.     Plaintiffs purchased shares of TPID at a price which was affected by the wrongful acts of Defendants.  Accordingly, under California Corporations Code §§25500 and 25501, each of the Defendants is liable to Plaintiffs for the damages caused by such wrongful acts, which damages shall be difference between the price at which Plaintiffs purchased the securities and the market value which such securities would have had at the time of the purchase in the absence of wrongful acts, plus interest at the legal rate, and reasonable attorneys' fees and costs.

## COUNT V

## BREACH OF FIDUCIARY DUTY

69.     Paragraphs 1 through 68 are hereby incorporated by reference as if they were repeated herein in full.

70.     Defendant Hamouth, as a controlling person of TPID, and the Hamouth Family Trust, as the entity through whom Hamouth owned his controlling interest, owed and continue to owe a fiduciary duty to Plaintiffs as a beneficial holders of TPID's common stock.

71.     Defendants Dunavant, as Chief Executive Officer, and subsequently Managing Director, of TPID, and Hendricks, as the Chief Operating Officer, and subsequently Chief Executive Officer, of TPID, each owed and continues to owe a fiduciary duty to Plaintiffs as beneficial holders of TPID common stock.

72.     Defendant TPID, as the issuer of its common stock, owed and continues to owe a fiduciary duty to Plaintiffs as a beneficial holders of TPID's common stock.

73.     Defendants TPID, Hamouth, Hamouth Family Trust, Dunavant and Hendricks breached their fiduciary duties to Plaintiffs by engaging in the wrongful conduct alleged herein.

74.     The Defendants TPID, Dunavant and Hendricks further breached their fiduciary duty by issuing newly issued shares to Hamouth and the Hamouth Trust without restrictive legend, when such shares were not registered with the SEC, nor subject to any exemption to registration, thereby permitting Hamouth and the Hamouth Trust to short sell TPID stock, at the same time that Hamouth and the other Defendants were inducing Plaintiffs to purchase TPID stock.  Even when they discovered that the

shares were issued without legend, they did not stop the unlegended shares from being used as part of the fraudulent scheme. The unregistered shares that were given to Hamouth and the Hamouth Trust were issued in such a fashion that Hamouth and the Hamouth Trust could engage in the fraudulent scheme alleged herein.

75.    Defendants TPID, Dunavant and Hendricks further breached their fiduciary duty by not cancelling the shares issued to Hamouth and the Hamouth Family Trust when they discovered that Hamouth and the Hamouth Family Trust had engaged in the fraudulent scheme and manipulation of the price of TPID shares alleged herein.

76.    Defendants TPID, Dunavant and Hendricks further breached their fiduciary duty by not commencing an action against Hamouth and the Hamouth Trust under § 16 of the Exchange Act to recover their illegally obtained short swing profits.

77.    As a result of Defendants' breaches of fiduciary duties, Plaintiffs have suffered economic damages in the amounts that Plaintiffs will establish at trial.

## COUNT VI

## BREACH OF CONTRACT AGAINST HAMOUTH AND THE HAMOUTH FAMILY TRUST

78.    Paragraphs 1 through 77 are hereby incorporated by reference the same as if they were repeated in full.

79.    As set forth above, Hamouth guaranteed that he would pay Plaintiffs any difference from their purchase price if the price of TPID stock went down after their purchase.

80.    Hamouth breached his agreement to pay Plaintiffs the difference between their purchase price and the current market price, which is virtually nil.

81.    Hamouth placed the shares to which he was entitled under his consulting

agreement in the name of the Hamouth Trust, but he remained the beneficial owner thereof.   Accordingly, the Hamouth Trust should be deemed responsible to honor Hamouth's agreement.

82.    Plaintiffs' suffered damages as a result of Hamouth and the Hamouth Trust's breach of the said agreements as will be shown at the trial of this case.

## COUNT VII

## PROMISSORY ESTOPPEL

83.    Paragraphs 1 through 82 are hereby incorporated by reference as if they were repeated herein in full.

84.    As set forth above, Hamouth made false promises of "downside protection," promising Brad Richdale, on behalf of the Ormond Trust and Deborah Richdale, to make up, in full, the difference between the price paid per share and the market price of the shares if the stock did not go up as he promised.

85.    Plaintiffs justifiably replied on those promises in purchasing TPID shares, to their detriment, suffered substantial economic loss and were damaged as will be shown at the trial of this case.

86.    As a result of the foregoing, Hamouth is estopped from denying his promise.

## COUNT VIII

## BREACH OF THE IMPLIED CONVENANT OF GOOD FAITH AND FAIR DEALING

87.    Paragraphs 1 through 86 are hereby incorporated by reference as if they were repeated herein in full.

88.     An implied covenant of good faith and fair dealing is implied in every contract.

89.     Hamouth entered into several agreements with Plaintiffs as alleged herein which included the obligation to provide shares to honor his guarantee of downward protection to Plaintiffs.

90.     Hamouth and the Hamouth Trust breached the covenant of good faith and fair dealing by virtue of his placing his shares in the name of the Hamouth Trust in an attempt to prevent Plaintiffs from receiving their bargain.

91.     Plaintiffs' suffered damages as a result of Hamouth and the Hamouth Trust's breach of the said agreements as will be shown at the trial of this case.

## COUNT IX

### INJUNCTIVE RELIEF

92.     Paragraphs 1 through 91 are hereby incorporated by reference as if they were repeated herein in full.

93.     The Hamouth Trust should be deemed responsible to honor Hamouth's agreement.  Accordingly, TPID, Hamouth and the Hamouth Trust should be preliminarily and permanently enjoined from permitting the Hamouth Trust from transferring, selling, or otherwise disposing of the TPID shares in its name, Hamouth and the Hamouth Trust should be directed to transfer ownership of all such shares to Plaintiffs, and TPID should be directed to change its books and records accordingly.

### PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs respectfully request a judgment:

1.      Awarding compensatory damages against all Defendants in an amount to be determined at trial, together with prejudgment interest as permitted by law.

2.       Based on Defendants' willful, wanton and repeated violations of Federal and State securities laws, awarding punitive damages in an amount to be fixed by the trier of facts.

3.       Preliminary and permanently enjoining Defendants from transferring any of the 3,000,000 shares of common stock issued to Hamouth and Hamouth Trust and directing that such shares be reissued, on the books and records of TPID, to Plaintiffs.

4.       Awarding the Plaintiffs the costs of this suit, and including reasonable attorney fees; and

5.       Granting such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Dated this 9th day of July, 2008.

Respectfully Submitted,

Jared H. Reiss, Esquire      / ID No. 93056
E-mail: jreiss@jacobslawpc.com
Neal A. Jacobs, Esquire      / ID No. 41918
E-mail: njacobs@jacobslawpc.com
One Commerce Square,
2005 Market St, Ste 1120
Philadelphia, PA 19103
Tel. (215) 569 9701
*Attorneys for Plaintiffs*

**Of Counsel:**
Martin S. Siegel, Esq. (*Pro Hac Vice* Application forth coming)
Brown Rudnick LLP
7 Times Square
New York, New York 10036
Tel. (212) 209-4800
Fax. (212) 209-4801
E-mail: msiegel@brownrudnick.com